IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

DANIEL CHARLES OTTO,                          Case No. 3:14-cv-01028-MA

             Plaintiff,                       OPINION AND ORDER

     v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

             Defendant.


SHARON D. MAYNARD
Bennett, Hartman, Morris & Kaplan, LLP
210 S.W. Morrison Street, Suite 500
Portland, OR 97204

        Attorney for Plaintiff

RONALD K. SILVER
Assistant United States Attorney
District of Oregon
1000 S.W. Third Ave., Suite 600
Portland, OR 97204-2902

COURTNEY M. GARCIA
Social Security Administration
Office of the General Counsel
701 Fifth Ave., Suite 2900, M/S 98104
Seattle, WA 98104

        Attorneys for Defendant


1 - OPINION AND ORDER

MARSH, Judge

Plaintiff Daniel Charles Otto seeks judicial review of the final decision of the Commissioner of Social Security denying his applications for a period of disability and disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-403, and application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f.  This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).  For the reasons that follow, I affirm in part and reverse in part.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiff protectively filed applications for DIB and SSI on March 31, 2010, alleging disability beginning February 26, 2009, due to severe cervical and lumbar spinal disease, obesity, left shoulder strain, and bilateral hand impairments.  Plaintiff's claims were denied initially and upon reconsideration.  Plaintiff filed a request for a hearing before an administrative law judge (ALJ).  An ALJ held a hearing on July 17, 2012, at which plaintiff appeared with her attorney and testified.  A vocational expert, Nancy E. Bloom, also appeared at the hearing and testified.  On August 20, 2012, the ALJ issued an unfavorable decision.  The Appeals Council denied plaintiff's request for review, and therefore, the ALJ's decision became the final decision of the Commissioner for purposes of review.

2 - OPINION AND ORDER

Plaintiff was born on December 3, 1955, and was 53 years old on his alleged onset of disability date, and 56 years old on the date of the ALJ's adverse decision. Plaintiff completed high school and some college courses, and has past relevant work as a school bus driver, mover, tractor-trailer driver, census worker, and census field operations manager.

## THE ALJ'S DISABILITY ANALYSIS

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520; 416.920. Each step is potentially dispositive. The claimant bears the burden of proof at steps one through four. *See Valentine v. Commissioner Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At step five, the burden shifts to the Commissioner to show that the claimant can do other work which exists in the national economy. *Hill v. Astrue*, 698 F.3d 1153, 1161 (9th Cir. 2012).

The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through June 30, 2014. A claimant seeking DIB benefits under Title II must establish disability on or prior to the last date insured. 42 U.S.C. § 416(I)(3); *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

At step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since his alleged onset of disability.

At step two, the ALJ found that plaintiff had the following severe impairments:  obesity, foraminal stenosis and anterolisthesis/ spondylolisthesis of L5-S1, degenerative disc disease of the cervical spine status post diskectomy and fusion, and history of left (non-dominant) shoulder strain.  At step three, the ALJ found that plaintiff's impairments, or combination of impairments, did not meet or medically equal a listed impairment.

The ALJ assessed plaintiff with a residual functional capacity (RFC) to perform light work, however, plaintiff can do no more than four hours of standing or walking in an eight hour workday; he can do no more than occasional pushing, pulling and overhead reaching with the left upper extremity; he has postural limitations such that he can engage in tasks requiring crouching, crawling, stooping, kneeling, balancing or climbing no more than occasionally.

At step four, the ALJ found that plaintiff is capable of performing his past relevant work as a census enumerator.  The ALJ made alternative findings at step five, concluding that considering plaintiff's age, education, work experience, and residual functional capacity, jobs exist in significant numbers in the national economy that plaintiff can perform, such as office helper, cashier II, and small products assembler.  Accordingly, the ALJ concluded that plaintiff has not been under a disability under the

Social Security Act from February 26, 2009 through the date of the decision.

## ISSUES ON REVIEW

On appeal to this court, plaintiff contends the following errors were committed: (1) the ALJ failed to properly evaluate his testimony; (2) the ALJ failed to properly evaluate the lay testimony of his wife Denise M. Otto; and (3) the ALJ failed to find him disabled as of his 55th birthday as directed under the Medical-Vocational Guidelines (the grids), 20 C.F.R. Part 404, Subpart P, Appendix 2, §§ 200.00 - 204.00.

The Commissioner contends that the ALJ did not err in discrediting plaintiff and the lay testimony, and properly determined that plaintiff could perform his past relevant work. Additionally, the Commissioner contends that even if the ALJ erred at step four, it was harmless because the ALJ made alternative step five findings that are supported by substantial evidence.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hill*, 698 F.3d

5 - OPINION AND ORDER

at 1159 (internal quotations omitted); *Valentine*, 574 F.3d at 690. The court must weigh all the evidence, whether it supports or detracts from the Commissioner's decision. *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, even if the evidence is susceptible to more than one rational interpretation. *Batson v. Commissioner Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If the evidence supports the Commissioner's conclusion, the Commissioner must be affirmed; "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## I.    Plaintiff's Credibility

### A.    Standards

To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must perform two stages of analysis. 20 C.F.R. §§ 404.1529, 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). At the second stage of the credibility analysis, absent affirmative evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony regarding the severity of the symptoms.

*Carmickle v. Commissioner Soc. Sec. Admin.*, 533 F.3d 1155, 1166 (9th Cir. 2008); *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

The ALJ must make findings that are sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti*, 533 F.3d at 1039. Factors the ALJ may consider when making such credibility determinations include the objective medical evidence, the claimant's treatment history, the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence. *Ghanim*, 763 F.3d at 1163; *Tommasetti*, 533 F.3d at 1039.

### B.   Analysis

At the hearing, plaintiff testified that he stopped working as a bus driver on February 29, 2009, after an accident in which he rear-ended another vehicle. Tr. 34. Plaintiff stated that he worked for the Census Bureau for 30 days in 2010 and that he was training others to go out and conduct inventory interviews. Tr. 35. Plaintiff stated that he previously worked for the Census Bureau from 1999 to 2005. Plaintiff described that he has been unable to find other supervisory-type work. Tr. 37. Plaintiff testified that he settled a union grievance, has a 10 percent disability from the Veteran's Administration, receives

unemployment, and has an unresolved workers compensation claim. Tr. 38.

Plaintiff testified that his worst pain is in his low back, and it causes burning in his right leg and foot, for which he takes gabapentin. Tr. 38. Plaintiff rated his low back pain at a five on a 10-point scale. Tr. 44. Plaintiff described that the pain interferes with his concentration, and that he no longer walks with his wife for exercise. Tr. 39, 44. Plaintiff testified that he is attending Portland Community College to study web design, and that he previously received straight "A's" taking a full credit load, but due to medications he was required to take for his pain, his grades slipped and he reduced his credit hours the previous term. Tr. 43.

Plaintiff testified that he is able to assist his wife with chores for approximately 20 to 30 minutes, then needs to sit down to rest for 20 minutes. Tr. 44. Plaintiff described that he has been diagnosed with arthritis, and that after 20 minutes of writing, or using the computer or a mouse, he needs to rest his hands. Tr. 46-47.

Plaintiff testified that he is no longer able to work as a bus driver because of the pain medication he takes, and because of his neck fusion at C5-6 and C6-7, pain in his shoulders, and his 25-pound lifting restriction. Tr. 48-49. Plaintiff estimated that he could lift 10 pounds occasionally, but that 25 pounds would be too

much; plaintiff testified that he could sit for 20-30 minutes, then needs to change position. Tr. 50. Plaintiff testified that he likes to lie down for 20 minutes two or three times a day. Tr. 56. Plaintiff testified that he has depression, for which he takes prozac, and receives mental health counseling. Tr. 54.

In a June 2, 2010 Function Report - Adult, plaintiff reported that his sleep is interrupted most nights by pain and tingling, and that he needs help with foot care, and putting on socks and shoes because bending causes back pain. Tr. 247. Plaintiff also described that he tries to walk around the block most days, and can shop in stores three to four times a month, and that he leans on the shopping cart. Tr. 249. Plaintiff described that he frequently visits with family and friends and described no difficulties getting along with others. Tr. 250. Plaintiff indicated that his conditions limit his lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, and using his hands. Tr. 251. Plaintiff estimated that he could lift 20 pounds maximum and that he could walk one block before needing to rest for five minutes. Plaintiff indicated that he has no difficulty concentrating, can follow written and spoken instructions well.

Plaintiff described that in a typical day, he wakes up with pain, and if it is tolerable, he will do physical therapy exercises, then wash up and have breakfast. Plaintiff described

9 - OPINION AND ORDER

that he usually goes for coffee with his friends to McDonald's, then returns home and makes phone calls, and walks around the block, then works a little on the computer. Tr. 254. Plaintiff then eats lunch with his wife, assists with household chores, then works on the computer again. After dinner, plaintiff described that he alternates between sitting and standing to watch television, then performs evening physical therapy exercises, and goes to bed. Tr. 254.

Plaintiff stated his activity is limited if he takes pain medication, and that due to nerve "death" in his right foot, he trips occasionally and that he takes extra care when getting in and out of the car, showering, and has difficulty walking and climbing the stairs.

Plaintiff described visiting with his parents, children, and grandchildren, and that when he has occasional attacks of gout, he uses a cane. Tr. 255. Plaintiff also stated that he cannot sit for long, such as watching a movie or driving long distances. Plaintiff stated he can mow the lawn with an electric mower twice a month, and that he helps his wife and parents once a week, but it takes much longer to perform each task. Tr. 256.

In the decision, the ALJ found plaintiff partially credible, noting that his medically determinable impairments could reasonably be expected to cause some symptoms and limitations, but that plaintiff's contention that he is incapable of all work activity

was not wholly credible.  The ALJ provided several reasons, which
when taken together, constitute clear and convincing support for
the ALJ's partially adverse credibility determination.

First, the ALJ noted that the severity of plaintiff's
allegations was not supported by the objective medical evidence.
When the claimant's own medical record undercuts his assertions,
the ALJ may rely on that contradiction to discredit the claimant.
*Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007); *Carmickle*,
533 F.3d at 1161.  As the ALJ discussed, the records of David Koon,
M.D., are inconsistent with plaintiff's allegations of complete
disability.  As the ALJ noted, Dr. Koon, was plaintiff's workers
compensation treating physician from May of 2009 through March of
2010, for plaintiff's left shoulder, cervical strain, and lumbar
strain after his bus accident.  Dr. Koon's records indicate that
plaintiff had pre-existing cervical stenosis, that he slowly
improved after the accident, and that plaintiff received injections
in his shoulder which plaintiff indicated were helpful.  Tr. 511.
On July 7, 2009, plaintiff was released to perform sedentary work.
Tr. 511-12.  As the ALJ indicated, on March 19, 2010, plaintiff had
5/5 strength in his lower extremities, and he had been released to
full duty work without restrictions.  Tr. 497.  And, as the ALJ
correctly noted, in Dr. Koon's Closing Medical Examination on
November 13, 2009, plaintiff had attained 5/5 strength bilaterally
in his upper extremities, he was released to full duty without

11 - OPINION AND ORDER

restrictions, and his residual pain in his neck and shoulders was being treated with tramadol. Tr. 499. Notably, plaintiff does not challenge the ALJ's assessment of the medical evidence. The ALJ's findings are fully supported by substantial evidence in the record. Therefore, the ALJ appropriately discounted plaintiff's contention that he has been unable to work in any capacity following his 2009 accident.

The ALJ also discussed that in January of 2011, plaintiff had numbness in his right arm, and that he had significant spinal stenosis confirmed by imaging. Tr. 22. As the ALJ noted, plaintiff underwent C5-6 and C6-7 anterior cervical diskectomies with allograft interbody fusion and plating on March 17, 2011. Post-operative imaging showed overall improvement of the canal stenosis, and plaintiff reported that the surgery resolved his arm pain. The ALJ's findings are backed by substantial evidence and provide clear and convincing support for partially rejecting plaintiff's testimony. Thus, the ALJ reasonably concluded that plaintiff's allegation of total disability is inconsistent with the objective medical evidence. *Carmickle*, 533 F.3d at 1161.

Second, the ALJ discussed that plaintiff's activities of daily living did not support his allegation of total disability. Where a claimant is able to perform everyday activities indicating capacities that are transferrable to a work setting, an ALJ may discredit a claimant on that basis. *Molina*, 674 F.3d at 1113.

12 - OPINION AND ORDER

And, an ALJ may discredit a claimant who may have some difficulty functioning to the extent that those activities contradict a claim of total disability.  *Id.*; *Turner v. Comm'r. Soc. Sec. Admin.*, 613 F.3d 1217, 1225 (9th Cir. 2010).  As the ALJ accurately noted, and substantial evidence in the record wholly supports, plaintiff is fully capable of all self-care, with the exception of foot care performed by his wife.

As the ALJ discussed, plaintiff described an active social life, including having coffee with friends regularly at McDonald's. As the ALJ noted, plaintiff uses public transportation, can drive for short distances, takes Tai Chi classes, and takes  short daily walks.  The ALJ discussed that plaintiff is capable of assisting with daily household chores for no longer than 15 minutes, can mow the lawn twice a month, and shops three or four times a month.  The ALJ noted that while plaintiff's description of ADL's shows some limitation, his level of abilities are consistent with those required for performing basic work activities.  Although plaintiff did not report doing any particular activity for an extended time, the number of activities performed in a day appear fairly extensive and the ALJ reasonably discounted plaintiff's credibility on this basis.

Additionally, the ALJ found plaintiff's ability to attend Portland Community College inconsistent with his allegation of total disability.  For example, as the ALJ noted, plaintiff took 12

credit hours in the fall 2011 term, and 20 credit hours in the winter 2012 term, earning a 4.0 grade point average. In the spring 2012 term he took 14 credit hours and earned a 2.14 grade point average, and subsequently reduced his load to eight credit hours. The ALJ noted that plaintiff testified that the only accommodation requested was a straight back chair and a recording device, and that plaintiff intended to earn his associate's degree in web design and earn a multi-media certificate. The ALJ found the evidence of school work, including some on a full-time basis, inconsistent with plaintiff's allegation of total disability. *Turner*, 613 F.3d at 1225.

Plaintiff argues that the ALJ erred in discounting his testimony on this basis because he testified that his increased pain caused him to take more pain medication, and that his grades therefore suffered. Although plaintiff's explanation is reasonable, the ALJ's interpretation of the conflicting evidence also is reasonable and will not be disturbed. *Valentine*, 574 F.3d at 693. In this regard, the ALJ's findings are supported by substantial evidence in the record. The ALJ identified specific evidence in the record that undermines plaintiff's claims that his impairments were so great that he is completely unable to work, and the ALJ appropriately discounted plaintiff's credibility on this basis.

Third, the ALJ discredited plaintiff because he applied for and received a job with the Census Bureau and worked for 30 days

after his alleged onset of disability. Plaintiff argues that the ALJ erred in discounting plaintiff's credibility on this basis.    I disagree.

The ALJ may consider work done by a claimant that does not rise to the level of substantial gainful activity as evidence that the claimant was able to do more work than alleged. 20 C.F.R. § 404.1571.    Here, the ALJ cited plaintiff's testimony that he stopped working not because of his impairments, but rather because the Census Bureau over-hired, and plaintiff's testimony that he desired to keep working at that job.    Tr. 22.    This testimony, in the ALJ's view, was evidence of plaintiff's functional abilities after his alleged onset date.    I conclude that on the record before me, the ALJ could consider plaintiff's work attempt and desire to continue working, as evidence that conflicted with his allegations of total disability.

In summary, the reasons supplied by the ALJ are clearly supported by substantial evidence in the record  and  readily amount to clear and convincing support for the ALJ's partially adverse credibility determination.

## II.  Lay Testimony

Lay witness testimony as to a claimant's symptoms or how an impairment affects his ability to work is competent evidence, which the ALJ must take into account.  *See Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009); *Stout v. Commissioner, Soc. Sec.*

*Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).  The ALJ is required to account for competent lay witness testimony, and if it is rejected, provide germane reasons for doing so.  *Valentine*, 574 F.3d at 694.

Plaintiff argues that the ALJ erred by failing to provide germane reasons for discounting the testimony of Denise M. Otto, his wife.  Mrs. Otto did not testify at the hearing, but submitted a Third Party Adult Function Report dated June 14, 2010.  The limitations described by Mrs. Otto are substantially similar to the limitations described by plaintiff.  In the decision, the ALJ gave some weight to Mrs. Otto's statements, noting that she described some physical limitations, but rejected her statements because the activities of daily living she described were inconsistent with total disability, and instead described an individual capable of performing "basic work-related tasks."  Tr. 20.

I find no error in the ALJ's assessment of the lay testimony.  As discussed above, the ALJ properly discounted plaintiff's credibility based on his ability to perform activities of daily living.  Therefore, in light of my conclusion that the ALJ provided clear and convincing reasons for rejecting plaintiff's testimony of similar subjective complaints, it follows that the ALJ provided germane reasons for Mrs. Otto's substantially similar lay testimony.  *Valentine*, 574 F.3d at 694.  Consequently, I conclude the ALJ did not err in assessing plaintiff's RFC.

16 - OPINION AND ORDER

## III. **Step Four**

At step four, the claimant has the burden to prove that he cannot perform his past relevant work (PRW) as actually performed or as generally performed in the national economy. *Carmickle*, 533 F.3d at 1166; *Pinto v. Massanari*, 249 F.3d 840, 844-45 (9th Cir. 2001). The ALJ must determine whether, in light of a claimant's RFC, he can return to substantial gainful activity performed in the past. 20 C.F.R. §§ 404.1520(e); 416.920(e); *Pinto*, 249 F.3d at 844-45.

Plaintiff contends that the ALJ erred in finding that he is capable of performing his PRW because the ALJ erroneously identified that work as a "census enumerator." Additionally, plaintiff argues that the step four finding is not supported by substantial evidence because the record is devoid of any evidence that plaintiff actually performed any statistical computations corresponding to the job identified by the VE.

The Commissioner responds that ALJ properly relied upon the VE's testimony in determining plaintiff's PRW. The Commissioner concedes that the VE erroneously identified plaintiff's past work as that of a census enumerator. Nevertheless, the Commissioner argues that when the record is properly evaluated, plaintiff's PRW is that of "census clerk," DOT 216.382-062, a finding that is supported by substantial evidence.

Plaintiff testified that in February 2010 he worked for the Census Bureau as a senior field representative, and in that capacity he trained and supervised team leaders who would then take their crews out and conduct inventories for the State of Oregon. Tr. 34. In a work history report, plaintiff indicated that he also worked for the Census Bureau as a census taker, walking from home to home to complete census inventories, and as a field representative, driving to people's homes to complete census surveys. Tr. 281-82.    At the hearing, the ALJ asked the VE to classify plaintiff's PRW. The VE testified that plaintiff was a "census worker," DOT 205.367-054, light exertion, unskilled, Specific Vocational Preparation (SVP) Level 2, and that plaintiff's supervisory position with the Census Bureau was a "census enumerator," DOT 216.382-062, sedentary exertion, semi-skilled, with an SVP Level 4. Tr. 59, 60. After posing a hypothetical to the VE which included all of plaintiff's limitations, the VE testified that such a person could perform plaintiff's PRW as a census enumerator, but that the census worker job would require too much walking for the person to perform. Tr. 62.

Having carefully reviewed the record and the VE's testimony, it is clear that the VE mis-identified the job corresponding with DOT 216.382-062 as a census enumerator. The job identified by the VE under DOT 216.382-062 corresponds to Statistical Clerk, or "census clerk." *See Dictionary of Occupational Titles*, (4th ed.

18 - OPINION AND ORDER

1991), 216.382-062, *available at* 1991 WL 671930.  The DOT defines a census clerk as someone who compiles data and computes statistics, compiles statistics, and possesses a Level 3 math abilities.  While plaintiff testified that he gathered census data and entered that information into a computer, plaintiff correctly contends that there is no evidence in the record whatsoever that he computed statistics and actually compiled data as set forth in the census clerk description in DOT 216.382-062.  Therefore, there is no substantial evidence in the record to support the ALJ's step four finding that plaintiff previously performed the work of a census clerk as actually or generally performed in DOT 216.382-062.

Accordingly, I conclude that the ALJ's step four finding that plaintiff could perform his PRW as a census clerk, DOT 216.382-062, is not supported by substantial evidence and the ALJ erred in finding that plaintiff was not disabled because he could perform his PRW.  Therefore, the ALJ was required to proceed to step five.

## IV.  **Step Five**

At step five of the sequential evaluation, the burden shifts to the Commissioner to establish that there are jobs in the national economy that the claimant can perform.  *Treichler v. Commissioner of Soc. Sec. Admin.*, 775 F.3d 1090, 1097 n. 1 (9th Cir. 2014).  The ALJ must determine whether jobs exist in the national economy that the claimant can perform despite his limitations and restrictions.  *Tackett*, 180 F.3d at 1103-04.

19 - OPINION AND ORDER

In the decision, at step five, the ALJ consulted the Medical-Vocational Guidelines (the "grids") as framework.   The ALJ noted that if plaintiff were able to perform a full range of light duty work, the grids directed a finding of "Not Disabled."   *See*   20 C.F.R. Pt. 404, Subpt. P, App. 2, § 202.00 Medical-Vocational Guidelines, Table No. 2, Rule 202.14 (2008)(high school graduate or more, skilled or semiskilled without transferrable skills, not disabled).   The ALJ found that plaintiff was born on December 3, 1955, and thus was an individual closely approaching advanced age on the date of his alleged onset of disability in 2009, had a high school education, and that transferability of skills was not an issue.   Because the light occupational base had been eroded due to plaintiff's non-exertional requirements, the ALJ then relied upon VE testimony to find that based on plaintiff's age, education, work experience and RFC, jobs existed in significant numbers that plaintiff could perform (including office helper, cashier II, and small products assembler) and therefore, plaintiff was not disabled.   Tr. 23-24.   I find no error in the ALJ's alternative step five findings concerning plaintiff's closely approaching advanced age category.   However, the ALJ failed to make additional findings for plaintiff's change in age category to "advanced age" when he turned 55 on December 3, 2010.

Plaintiff argues the ALJ erred in failing to find him disabled as of his 55th birthday.[1]  According to plaintiff, when he changed to "advanced age," the grids direct a finding of disability at both the sedentary and light exertion levels under Medical-Vocational Rules 201.06 and 202.06, and consulting VE testimony was error. Plaintiff is correct.

An ALJ is required to use each of the age categories that apply to the claimant during the period for which the ALJ must determine if the claimant is disabled.  20 C.F.R. §§ 404.1563(b), 416.963(b), *see also id.* at § 404.1563(a)("we consider advancing age to be an increasingly limiting factor").  Here, the period of adjudication started on plaintiff's alleged onset date, February 26, 2009, and continued through the August 20, 2012 decision. Plaintiff was 53 years old on the date of his alleged onset of disability.  Under the regulations, at age 53, plaintiff is categorized as "closely approaching advanced age."  20 C.F.R. §§ 404.1563(d); 416.963(d).  However, on the date of the ALJ's August 20, 2012 decision, plaintiff was 56 years old, which corresponds to "advanced age."  20 C.F.R. §§ 404.1563(e), 416.963(e).  Thus, the ALJ clearly erred in failing to make additional findings considering plaintiff's changed age category.

_____

[1]The ALJ's failure to consider plaintiff's advanced age appears to be an oversight, as demonstrated by the ALJ's inquiry at the hearing as to whether plaintiff wanted to amend his alleged onset date to his 55th birthday; plaintiff declined to do so.  Tr. 66-67.

The Medical-Vocational Guidelines, known as "the grids," present in table form a shorthand method for determining the availability and number of suitable jobs for a claimant. *See Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006); *Tackett*, 180 F.3d at 1101. The grids categorize jobs by physical-exertional levels, and a claimant's placement in the appropriate table depends upon four factors - age, education, previous work experience, and physical ability. *Lounsbury*, 468 F.3d at 1114-15. For each combination of these factors, the grids direct a finding of disabled or not disabled based on the number of jobs in the national economy in the appropriate exertional category. *Id.* If the grids direct a finding of disabled, other evidence, including testimony from a VE, cannot be used to change that outcome. *Cooper v. Sullivan*, 880 F.2d 1152, 1156-57 (9th Cir. 1989); *Lounsbury*, 468 F.3d at 1115-16.

As plaintiff correctly indicates, application of the correct grid rules after his 55th birthday dictates that he is disabled. The ALJ found that plaintiff has an RFC to perform modified light work and has a high school education with some college. Rule 202.06 directs a finding of "disabled" for individuals of advanced age, with a high school education or more, whose education does not provide for direct entry into skilled work, and whose skilled or semiskilled previous work experience does not provide transferrable

skills. Moreover, footnote 2 to Rule 202.06 incorporates language from Rule 202.00(c) which provides:

> However, for individuals of advanced age who can no longer perform vocationally relevant work . . . who have only skills that are not readily transferrable to a significant range of semi-skilled or skilled work that is within the individual's functional capacity, . . . the limitations in vocational adaptability represented by functional restriction to light work warrant a finding of disabled.

During the hearing, the VE testified that plaintiff has no transferrable skills. Tr. 63. Additionally, when considering the grids, the court must ignore plaintiff's non-exertional limitations. *Lounsbury*, 468 F.3d at 1116. Therefore, application of Rule 202.06 dictates that plaintiff is disabled.

This outcome is bolstered further by 20 C.F.R. § 404.1568(d)(4), which provides that "if you are of advanced age (age 55 or older), and you have a severe impairment(s) that limits you to sedentary or light work, we will find that you cannot make an adjustment to other work unless you have skills that you can transfer to other skilled or semiskilled work." As plaintiff correctly indicates, Medical-Vocational Rule 201.06 for sedentary work also dictates a finding of "disabled."

Therefore, because plaintiff does not have any transferable skills, and the grids direct a finding of disabled as of plaintiff's 55th birthday, I conclude that a remand for an award of benefits is appropriate. In similar situations, the court has discretion to remand for an immediate award of benefits where there

23 - OPINION AND ORDER

are no outstanding issues that require resolution and where it clear that an ALJ would be required to find plaintiff disabled on remand. *See Garrison v. Colvin*, 759 F.3d 995, 1022 (9th Cir. 20120)(remanding for an immediate payment of benefits appropriate if credit-as-true conditions are satisfied). I have carefully reviewed the record, and considered the Commissioner's arguments, and have no basis to doubt that plaintiff is disabled as of his 55th birthday. Remanding for further proceedings would serve no useful purpose here. The record is complete, and application of the Medical-Vocational Rules require a finding that plaintiff is disabled as of December 3, 2010.

<b><u>CONCLUSION</u></b>

Based on the foregoing reasons, the Commissioner's final decision is AFFIRMED IN PART, REVERSED IN PART, and REMANDED for an immediate calculation and award of benefits based on an onset date of December 3, 2010.

IT IS SO ORDERED.

DATED this _2_ day of JULY, 2015.

_Malcolm F. Marsh_
Malcolm F. Marsh
United States District Judge

24 - OPINION AND ORDER